## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 19-cv-62412-BLOOM/Valle

INTERIM HEALTHCARE, INC.,

     Plaintiff,

v.

INTERIM HEALTHCARE OF SOUTHEAST
LOUISIANA, INC., INTERIM
HEALTHCARE HOSPICE, INC.,
and JULIA BURDEN, individually,

     Defendants.

_____/

### OMNIBUS ORDER

**THIS CAUSE** is before the Court upon Defendants Interim Healthcare Hospice, Inc. ("IH Hospice") and Julia Burden's ("Burden") (collectively, "Defendants")[1] Motion to Dismiss Plaintiff's Complaint and/or Motion to Transfer Venue Under 28 U.S.C. § 1404, ECF No. [40] ("Motion to Dismiss"), and accompanying Memorandum of Law, ECF No. [41]; Plaintiff Interim Healthcare, Inc.'s ("Plaintiff") Motion for a Preliminary Injunction, ECF No. [30] ("Preliminary Injunction Motion"); and Defendants' Amended Motion to Stay Proceedings Pending Ruling on Motion to Dismiss, ECF No. [33] ("Motion to Stay"), (collectively, the "Motions"). The Court has carefully reviewed the Motions, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion to Dismiss is denied; the Preliminary Injunction Motion is granted in part and denied in part consistent with this Order; and the Motion to Stay is denied.

---

[1] There is one additional named Defendant in this case, Interim Healthcare of Southeast Louisiana, Inc. ("IHSL"), against whom this action is stayed due to its ongoing bankruptcy proceedings. *See* ECF No. [21] (notice of bankruptcy regarding IHSL); ECF No. [27].

## I.  **BACKGROUND**

Plaintiff initiated this action on September 27, 2019, against IHSL and Burden as the sole shareholder and operator of IHSL. ECF No. [1]. On November 8, 2019, Plaintiff moved for a preliminary injunction against IHSL and Burden, seeking to assume operation and control of IHSL's hospice business and to obtain IHSL's Hospice License and Medicare provider number. ECF No. [19]. On November 22, 2019, however, Plaintiff filed a Notice of Bankruptcy Proceeding, ECF No. [21], indicating that, on November 19, 2019, IHSL filed a Chapter 11 Voluntary Petition (Non-Individual) in U.S. Bankruptcy Court for the Eastern District of Louisiana. Based on this Notice, on December 17, 2019, the Court stayed the case against IHSL and Burden, as the shareholder and operator of IHSL, pending the conclusion of IHSL's bankruptcy case. ECF No. [27]. Accordingly, the case was administratively closed.

Plaintiff also initiated an action against IH Hospice and Burden, as the sole shareholder and operator of IH Hospice, on November 26, 2019, under case number 19-cv-62932. *See Interim Healthcare, Inc. v. Interim Healthcare Hospice, Inc.*, No. 19-cv-62932, ECF No. [1] ("*IHH*"). On February 12, 2020, *IHH* was transferred to the undersigned and consolidated with the instant case number. *See IHH*, No. 19-cv-62932, ECF Nos. [25] & [26]. The instant Motions address the consolidated proceedings against IH Hospice and Burden, as the sole shareholder and operator of IH Hospice.[2]

The Complaint alleges as follows:

> 8. [Plaintiff] is the franchisor of the Interim Healthcare and Hospice franchise system that provides nursing, therapy and non-medical home care, hospice and healthcare staffing services through over 300 franchisees throughout the United States.
> 9. [Plaintiff] owns the mark "Interim Healthcare Hospice", which is registered on the United States Patent and Trademark Office's Principal Register at

---

[2] For ease of reference, the Court will cite documents filed on the docket under the instant case number, and not those filed on the docket in *IHH*, the remainder of this Order.

No. 4,428,294. [Plaintiff] also owns the marks "Interim" and "Interim Healthcare", which are registered on the United States Patent and Trademark Office's Principal Register of Trademarks at Nos. 1,763,176 and 1,910,368, respectively (collectively, [Plaintiff's] trademarks are called the "Proprietary Marks"). [Plaintiff] has continually used and advertised the Proprietary Marks throughout the country.

## The Franchise Agreements

10. Interim franchisees are licensed to use [Plaintiff's] Proprietary Marks to operate under [Plaintiff's] business system pursuant to the terms and conditions of the [Plaintiff's] franchise agreement entered into between each franchisee and [Plaintiff] itself.

11. Interim franchisees are also licensed to use [Plaintiff's] proprietary business policies, trade secrets, procedures, standards, and ad specifications for operations, all of which are disclosed to Interim franchisees in confidence.

12. Under each franchise agreement, Interim franchisees must pay [Plaintiff] an initial franchise fee and ongoing, monthly royalty fees.

13. On May 11, 1970, Personnel Pool of America, Inc. ("PPA") and Personnel Pool of New Orleans, Inc. ("PPNO") entered into a franchise agreement (the "New Orleans Franchise Agreement") under which PPNO was granted the right and undertook the obligation to operate an "Interim Healthcare" franchise in several Parishes in and around New Orleans, Louisiana. PPA assigned the New Orleans Franchise Agreement to [Plaintiff] and PPNO subsequently assigned the New Orleans Franchise Agreement to Interim Healthcare of New Orleans, Inc. ("IHNO"). On May 1, 2012, IHNO assigned the New Orleans Franchise Agreement to Interim Healthcare of Southeast Louisiana, Inc. ("IHSL"), an entity owned and controlled by Burden (the "Assignment"). A true and correct copy of the New Orleans Franchise Agreement and the Assignment are attached as Exhibit "A."

14. In conjunction with the New Orleans Franchise Agreement, Burden executed a personal guarantee and agreed to be bound by Sections 18 and 27 of the New Orleans Franchise Agreement (the "New Orleans Guaranty"). *See* Exhibit "A."

15. On March 12, 2012, [Plaintiff] and IHNO entered into a franchise agreement (the "Livingston Franchise Agreement") pursuant to which IHNO was granted the right and undertook the obligation to operate an "Interim Healthcare" franchise in several Parishes in and around Livingston Parish, Louisiana. A true and correct copy of the Livingston Franchise Agreement is attached as Exhibit "B." In 2013, the charter of IHNO was revoked by the State of Louisiana. Since then, the Livingston Franchise Agreement has been operated by IHSL, [IH Hospice,] and Burden with the consent of [Plaintiff].

16. In conjunction with the Livingston Franchise Agreement, Burden executed a personal guarantee and agreed to be bound by "the covenants and conditions of Sections 10, 15 and 20.5" of the Livingston Franchise Agreement (the "Livingston Guaranty"). *See* Exhibit B. The New Orleans Guaranty and the Livingston Guaranty are collectively referred to as the "Guarantees."

17. [IH Hospice], Burden and IHSL have held themselves out as the successors of IHNO and they have performed under, and enjoyed the benefits of, the Livingston Franchise Agreement. Accordingly, [IH Hospice], Burden and IHSL have adopted the terms of the Livingston Franchise Agreement and are liable to Interim for all of IHNO's obligations thereunder. The Livingston Franchise Agreement and the New Orleans Franchise Agreement are collectively referred to as the "Franchise Agreements."

18. Pursuant to Section 19 of the New Orleans Franchise Agreement (as amended by the Addendum dated December 9, 2004) and Section 11.1 of the Livingston Franchise Agreement, [IH Hospice] was required to pay to [Plaintiff] a weekly service charge equal to: (1) three and one quarter percent of their weekly Medicare and Medicaid sales; and (2) five and one quarter percent of their weekly sales other than Medicare and Medicaid sales.

19. Pursuant to the Franchise Agreements, any amounts not paid when due to Interim within five days of the due date incur a late fee of $25. Furthermore, any amounts not paid within thirty days of being due under the Livingston Franchise Agreement shall accrue interest at the lesser of: (1) one and one-half percent per month; or (2) the maximum interest rate allowed by applicable law.

20. Section 30 of the New Orleans Franchise Agreement provides that:

> Upon any such termination, [Plaintiff] shall have the immediate right to place its employees upon the premises of Franchisee for the purpose of continuing the operation of the business for the benefit of [Plaintiff]. Franchisee agrees to turn over to [Plaintiff] the names of all of its customers and the names of all of its permanent and temporary employees, and any manuals furnished or made available to it by [Plaintiff]. Franchisee further agrees that, upon any such termination, it will no longer do business as a corporation under, or use as an assumed or registered trade name, the names set forth in Paragraph l(b) hereof and, Franchisee agrees to execute, or cause to be executed, such document or documents and to take such further steps as may be necessary so as to entitle [Plaintiff] to exercise the sole rights of use and ownership with respect to any of [Plaintiff's] trade names, trademarks or service marks.

21. Section 17.1 of the Livingston Franchise Agreement, pursuant to which hospice services were provided, states in pertinent part:

> Upon expiration or termination of this Agreement for any reason, including the rejection of this contract by Franchisee in connection with any bankruptcy proceedings filed by or against Franchisee, Franchisee's right to use plans, methods and procedures of [Plaintiff] together with the trade names, trademarks, and/or service marks, now or hereafter licensed or acquired, and any derivatives thereof, shall immediately cease, and Franchisee shall immediately discontinue the use thereof . . .

22. In addition, Section 17.2 of the Livingston Franchise Agreement, pursuant to which hospice services were provided, states:

> Upon any such expiration or other termination, [Plaintiff] shall have the immediate right to place its employees, or those of its designee, upon the premises of Franchisee for the purpose of continuing the operation of the Franchise Business for the benefit of [Plaintiff]. Franchisee agrees to turn over to [Plaintiff], and to no other party without the express written consent of [Plaintiff], the names, addresses and telephone numbers of all of the customers and the permanent and temporary employees of the Franchise Business (all of which information Franchisee hereby acknowledges has been co-developed by [Plaintiff] and Franchisee during the term of this Agreement, and which Franchisee has been authorized by [Plaintiff] to use only in connection with a business operated pursuant to the terms and conditions set forth in this Agreement), and any manuals furnished or made available to it by [Plaintiff]. **Franchisee further agrees to execute and deliver to [Plaintiff] any and all instruments necessary to effect assignment or other transfer of** its telephone number(s), telephone directory listing agreement(s), office lease(s), office equipment lease(s) and **all licenses, permits, certificates of need or other authorizations (or the rights thereto)** which [Plaintiff] elects to assume, to [Plaintiff] or its designee upon [Plaintiff's] written demand therefor.

(Emphasis added).

23. In addition, Section 17.3 of the Livingston Franchise Agreement, pursuant to which hospice services were provided, states in pertinent part:

> Franchisee further agrees that, upon such expiration or other termination, it will no longer do business as a corporation under, or use as an assigned or registered trade name, the name Interim Healthcare, or any other trade name, trademark or service mark hereafter licensed by or acquired from [Plaintiff], and Franchisee agrees to execute or cause to be executed, such document or documents and to take such further steps as may be necessary so as to cease all such trade names, trademarks or service marks. [Plaintiff] shall have the right to apply to a court of competent jurisdiction for an injunction to restrain Franchisee from continuing to use the aforesaid names as part of its corporate or assumed name and from using any trade name, trademark or service mark authorized by [Plaintiff] in this Agreement or elsewhere, or any derivatives thereof, and Franchisee agrees that such court may decree the payment by Franchisee of all reasonable attorney's fees and costs incurred by [Plaintiff] in any such proceeding.

Case No. 19-cv-62412-BLOOM/Valle

24. Further, pursuant to Section 10(b) of the Livingston Franchise Agreement, [IH Hospice] and Burden agreed that, for the term of the Livingston Franchise Agreement and a period of eleven months thereafter, they would not engage in any business or activity competitive to the business of providing, among other things, hospice services and home healthcare services, or assist a competitor in any way to provide such services within a radius of one hundred miles of any Interim franchisee or affiliate.

25. Section 20.5 of the Livingston Franchise Agreement provides that if [Plaintiff] commences an action to enforce any term or condition of the Franchise Agreements, or as a result of a breach or alleged breach of any term or condition of the Franchise Agreements, the non-prevailing party would pay to the prevailing party the reasonable attorney's fees, costs and expenses incurred in connection with the prosecution of such action.

26. Burden agreed to personally be liable for any attorney's fees award pursuant to Section 20.5 of the Livingston Franchise Agreement under the Livingston Guaranty.

**The Interim Hospice Services**

27. Paragraph 1(c)(iii) of the Livingston Franchise Agreement provided IHSL and Burden the right to offer hospice services.

28. On January 9, 2013, Burden registered [IH Hospice] with the office of the Louisiana Secretary of State for the purposes of providing hospice services under the Livingston Franchise Agreement.

29. On May 14, 2019, the Louisiana Department of Health and Hospitals issued a license (License No. 363) to [IH Hospice] for hospice services (the "Hospice License").

30. At all relevant times, [IH Hospice] has enjoyed the benefit of the Franchise Agreements, operated under [Plaintiff's] Proprietary Marks, and has been the sole provider of hospice services permitted thereunder.

**Defendants' Breach of the Franchise Agreements**

31. On May 2, 2018, [Plaintiff] served IHSL with notice of default for failure to make certain payments due under the New Orleans Franchise Agreement in the amount of $294,384 and $6,855.91 due under the Livingston Franchise Agreement (the "Notice of Default"). The Notice of Default provided IHSL with ten days to cure the defaults.

32. IHSL failed to cure the defaults and on May 17, 2018, [Plaintiff] served IHSL with a notice (the "Letter of Understanding") that it was conditionally extending the cure period with the condition that IHSL pay $2,500 due in June, July and August 2018, and then pay $5,000 per month thereafter until all amounts due under the Franchise Agreements were paid in full. IHSL executed the Letter of Understanding and returned it to [Plaintiff]. A true and correct copy of the Letter of Understanding is attached as Exhibit "C."

33. Although IHSL made all three $2,500 payments due under the Letter of Understanding and proceeded to make another three of the $5,000 payments, IHSL breached the Letter of Understanding by failing to make the remaining $5,000 payments.

34. [IH Hospice's] failure to pay the amount due under the Franchise Agreements on hospice service sales in a timely manner constitutes a material default of the Franchise Agreements.

## Termination of the Franchise Agreements and Breach of the Post-Termination Obligations

35. As a result of IHSL's breaches of the Franchise Agreements and the Letter of Understanding, Interim terminated the Franchise Agreements on August 20, 2019 ("Termination Date" and "Termination Notice"). The Termination Notice is attached as Exhibit "D."

36. Thereafter, [Plaintiff] provided Burden and her entities with a conditional right to continue operating while the parties negotiated a potential resolution of the dispute.

37. Such efforts to negotiate amicable resolution failed and, on October 28, 2019, [Plaintiff] reiterated the termination of the Franchise Agreements and demanded compliance with [Plaintiff's] post-termination right to step in and operate the business as set forth in Section 17.2 of the Livingston Franchise Agreement and Section 30 of the New Orleans Franchise Agreement.

38. Burden and her entities refused to cooperate with [Plaintiff] as required under the Franchise Agreements and on October 28, 2019, [Plaintiff] served notice demanding that IHSL fulfill its contractual obligations (the "Demand Notice"). A true and correct copy of the Demand Notice is attached as Exhibit "E."

39. On November 19, 2019, IHSL filed a voluntary petition for Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the Eastern District of Louisiana, No. 19-13127. Neither Burden nor [IH Hospice] have sought bankruptcy protection.

40. Defendants failed and refused, and continue to fail and refuse, to cooperate with [Plaintiff] as required by Section 17.2 and 30 of the respective Franchise Agreements.

41. [Plaintiff] is owed a total of $425,112.43 in unpaid fees due under the Franchise Agreements, a portion of which is royalty and interest on hospice services sales made by [IH Hospice] under [Plaintiff's] Proprietary Marks and business system under the Franchise Agreements.

42. [IH Hospice] and Burden continue to offer hospice services under the Interim name and proprietary business system (the "Competitive Business").

43. Upon information and belief, [IH Hospice] and Burden intend to sell or otherwise transfer the [IH Hospice] business and/or the Hospice License.

44. [IH Hospice], which derives its operational authority from the Livingston Agreement, breached its obligation to permit [Plaintiff] to step in and operate the business for [Plaintiff's] benefit and to assign to [Plaintiff] the licenses, permits, certificates of need and other authorizations, including the assignment of

the Hospice License and [IH Hospice's] Medicare provider number, which are necessary for the continued operation of the Interim hospice business.

ECF No. [30-1] at 6-13, ¶¶ 8-44 (footnotes omitted).

The Complaint asserts five counts: Count I (Breach of Contract and Accounting – Past Due Royalties); Count II (Breach of Implied Contract – Past Due Royalties); Count III (Breach of Contract – Noncompete); Count IV (Trademark Infringement and Unfair Competition); and Count V (Breach of Contract – Relief to Require Transfer of Medicare and Related Licenses). *See generally* ECF No. [30-1] at 4-21.

On December 26, 2019, Defendants filed their Motion to Dismiss. ECF Nos. [40] & [41].[3] Plaintiff filed a Response in Opposition on January 9, 2020, ECF No. [42], to which Defendants filed a Reply on January 14, 2020, ECF No. [43]. Then, on March 3, 2020, Plaintiff filed its Preliminary Injunction Motion. ECF No. [30]. Defendants filed their Response to the Preliminary Injunction Motion on March 23, 2020, ECF No. [37], and Plaintiff filed a Reply on March 30, 2020, ECF No. [39]. Finally, On March 11, 2020, Defendants moved to stay the instant action pending the Court's ruling on the Motion to Dismiss, ECF No. [33], which Plaintiff responded to on March 25, 2020, ECF No. [38]. The Motions are ripe for review and the Court will address each Motion individually.

---

[3] The Motion to Dismiss was originally filed in case number 19-cv-62932. *See* ECF Nos. [7], [8], & [9]. On May 1, 2020, after the two cases were consolidated, the Motion to Dismiss was refiled in the instant case to be ruled on alongside the Preliminary Injunction Motion and the Motion to Stay. *See* ECF Nos. [40], [41], [42], & [43].

## II. <u>LEGAL STANDARD</u>

### A. MOTION TO DISMISS

#### 1. Rule 12(b)(1) Motion

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the district court's subject-matter jurisdiction and takes one of two forms: a "facial attack" or a "factual attack." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence*, 919 F.2d at 1529). "A 'factual attack,' on the other hand, challenges the existence of subject matter jurisdiction based on matters outside the pleadings." *Kuhlman v. United States*, 822 F. Supp. 2d 1255, 1256-57 (M.D. Fla. 2011) (citing *Lawrence*, 919 F.2d at 1529); *see also Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008) ("[A] factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony."). "Plaintiff bears the burden of proving the existence of subject matter jurisdiction." *Desporte-Bryan v. Bank of Am.*, 147 F. Supp. 2d 1356, 1360 (S.D. Fla. 2001) (citing *Boudreau v. United States,* 53 F.3d 81, 82 (5th Cir. 1995)).[4]

"In assessing the propriety of a motion for dismissal under Fed. R. Civ. P. 12(b)(1), a district court is not limited to an inquiry into undisputed facts; it may hear conflicting evidence and decide for itself the factual issues that determine jurisdiction." *Colonial Pipeline Co. v.*

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the Court of Appeals for the Fifth Circuit decided prior to October 1, 1981.

*Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991). As such, "[w]hen a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1) the district court is free to independently weigh facts, and 'may proceed as it never could under Rule 12(b)(6) or Fed. R. Civ. P. 56.'" *Turcios v. Delicias Hispanas Corp.*, 275 F. App'x 879, 880 (11th Cir. 2008) (quoting *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003)).

### 2. Rule 12(b)(2) Motion

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing a *prima facie* case of personal jurisdiction. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). The district court must accept the facts alleged in the complaint as true to the extent they are uncontroverted by the defendant's affidavits. *S & Davis Int'l, Inc. v. Republic of Yemen*, 218 F.3d 1292, 1303 (11th Cir. 2000).

"Once the plaintiff pleads sufficient material facts to form a basis for *in personam* jurisdiction, the burden shifts to the defendant to challenge plaintiff's allegations by affidavits or other pleadings." *Carmouche v. Carnival Corp.*, 36 F. Supp. 3d 1335, 1388 (S.D. Fla. 2014), *aff'd sub nom. Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201 (11th Cir. 2015). A defendant challenging personal jurisdiction must present evidence to counter the plaintiff's allegations. *Internet Sols. Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009). "Where . . . the Defendant submits affidavit(s) to the contrary, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002); *see also Internet Sols. Corp.*, 557 F.3d at 1295; *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990). If the defendant makes a sufficient showing of the inapplicability of the long-arm statute, "the plaintiff is required to

substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." *Polskie Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 972 (11th Cir. 1986); *see also Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). Conclusory statements, "although presented in the form of factual declarations, are in substance legal conclusions that do not trigger a duty for Plaintiffs to respond with evidence of their own supporting jurisdiction." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999).

Where the evidence conflicts, the district court must construe all reasonable inferences in favor of the plaintiff. *See PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010). Likewise, "[w]hen there is a battle of affidavits placing different constructions on the facts, the court is inclined to give greater weight, in the context of a motion to dismiss, to the plaintiff's version . . . particularly when the jurisdictional questions are apparently intertwined with the merits of the case." *Delong Equip. Co. v. Wash. Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988) (internal quotations and alterations omitted). "But, when the plaintiff offers no competent evidence to the contrary, a 'district court may find that the defendant's unrebutted denials [are] sufficient to negate plaintiff's jurisdictional allegations.'" *Serra-Cruz v. Carnival Corp.*, 400 F. Supp. 3d 1354, 1357 (S.D. Fla. 2019) (citing *Zapata v. Royal Caribbean Cruises, Ltd.*, No. 12-cv-21897, 2013 WL 1100028, at *2 (S.D. Fla. Mar. 15, 2013)).

Additionally, because "the extent of the long-arm statute is governed by Florida law, 'federal courts are required to construe it as would the Florida Supreme Court.'" *Cable/Home Commc'n Corp.*, 902 F.2d at 856 (quoting *Oriental Imps. & Exps., Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 890-91 (11th Cir. 1983)). "Absent some indication that the Florida Supreme Court would hold otherwise, [federal courts] are bound to adhere to decisions of its

intermediate courts." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996) (citing *Polskie Linie Oceaniczne*, 795 F.2d at 970). "[T]he long-arm statute must be strictly construed, and any doubts about the applicability of the statute are resolved in favor of the defendant and against a conclusion that personal jurisdiction exists." *Gadea v. Star Cruises, Ltd.*, 949 So. 2d 1143, 1150 (Fla. 3d DCA 2007) (citing *Seabra v. Int'l Specialty Imp., Inc.*, 869 So. 2d 732, 733 (Fla. 4th DCA 2004)).

### 3. Rule 12(b)(3) Motion & Transfer of Venue Pursuant to 28 U.S.C. § 1404(a)

When a defendant objects to venue under Rule 12(b)(3), the plaintiff bears the burden of showing that the venue selected is proper. *See Delong Equip. Co.*, 840 F.2d at 845 (explaining that the plaintiff must make "only a prima facie showing of venue"); *see also BP Prods. N. Am., Inc. v. Super Stop 79, Inc.*, 464 F. Supp. 2d 1253, 1256 (S.D. Fla. 2006). "The facts as alleged in the complaint are taken as true, to the extent they are uncontroverted by defendants' affidavits." *Delong Equip. Co.*, 840 F.2d at 845. The court may also consider facts outside the complaint to determine whether venue is proper. *See Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004). In examining the record, the court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff. *Id.*

Generally, venue in federal civil actions is governed by 28 U.S.C. § 1391. "Pursuant to § 1391(b), venue is proper in: (1) a judicial district in which any defendant resides, if all defendants are residents of the state in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." *TMJ Practice Mgmt.*

*Assocs., Inc. v. Curran*, No. 16-81903-CIV, 2017 WL 3130421, at *3 (S.D. Fla. July 24, 2017). If venue is improper, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

"[A]cknowledging that venue may be proper in two or more districts, the Eleventh Circuit has stated that 'only the events that directly give rise to a claim are relevant' and that 'of the places where the events have taken place, only those locations hosting a 'substantial part' of the events are to be considered.'" *TMJ Practice Mgmt. Assocs., Inc.*, 2017 WL 3130421, at *3 (footnote omitted) (quoting *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003)). "[O]nly those acts and omissions that have a close nexus to the wrong" are relevant in the venue analysis. *Jenkins Brick Co.*, 321 F.3d at 1372. In conducting this analysis, "the proper focus of the venue inquiry is on the relevant activities of the Defendants." *Hemispherx Biopharma, Inc. v. MidSouth Capital, Inc.*, 669 F. Supp. 2d 1353, 1357 (S.D. Fla. 2009); *see also TMJ Practice Mgmt. Assocs., Inc.*, 2017 WL 3130421, at *3 n.2 ("[I]n accordance with Eleventh Circuit precedent, the Court must focus its venue analysis not on all aspects of the relationships between the parties, but on the location of the acts and omissions giving rise to the claims asserted, those actions with a close nexus to the wrong.").

## B.  MOTION FOR PRELIMINARY INJUNCTION

"A preliminary injunction may be issued to protect the plaintiff from irreparable injury and to preserve the district court's power to render a meaningful decision after a trial on the merits." *Canal Auth. of the State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974); *see also Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990) ("*NE Fla. CAGC of Am.*") ("The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." (quoting *Sampson v. Murray*,

415 U.S. 61, 90 (1974))). District courts ultimately have discretion on whether or not to grant a preliminary injunction. *Callaway*, 489 F.2d at 572. However, "a preliminary injunction is an extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of persuasion." *Id.* at 573. A "preliminary injunction 'is not the same as an adjudication on the merits,' but is merely a device created to preserve the rights of the parties until a determination can be made on the merits." *Sandy's Cafe, LLC*, 2018 WL 3413042, at \*19 (quoting *Tipsey McStumbles, LLC, v. Griffin*, No. CV 111-053, 2011 WL 13217129, \*1 n.1 (S.D. Ga. Aug. 2, 2011)); *see also Augusta Video, Inc. v. Augusta-Richmond Cty., Ga.*, 249 F. App'x 93, 98 n.4 (11th Cir. 2007).

A movant must prove four factors in order to establish that a preliminary injunction is appropriate: (1) "a substantial likelihood of success on the merits," (2) "that the preliminary injunction is necessary to prevent irreparable injury," (3) "that the threatened injury outweighs the harm the preliminary injunction would cause the other litigant," and (4) "that the preliminary injunction would not be averse to the public interest." *Chavez v. Fla. SP Warden*, 742 F.3d 1267, 1271 (11th Cir. 2014) (citing *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034-35 (11th Cir. 2001)).

Preliminary injunctions are "customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) (citation omitted). As such, "all of the well-pleaded allegations [in a movant's] complaint and uncontroverted affidavits filed in support of the motion for a preliminary injunction are taken as true." *Elrod v. Burns*, 427 U.S. 347, 350 n.1 (1976). Further, in reviewing a motion for preliminary injunction, "a district court may rely on affidavits and hearsay materials which

14

would not be admissible evidence for a permanent injunction, if the evidence is 'appropriate given the character and objectives of the injunctive proceeding.'" *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (quoting *Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986)). "When considering a motion for preliminary injunction, a district court may assess the relative strength and persuasiveness of the evidence presented by the parties, and is not required to resolve factual disputes in favor of the non-moving party." *Sandy's Cafe, LLC v. Santiago*, No. 18-10007-CIV, 2018 WL 3413042, at *20 (S.D. Fla. June 5, 2018) (citing *Imaging Business Machines, LLC. v. BancTec, Inc.*, 459 F.3d 1186, 1192 (11th Cir. 2006)).

## C. MOTION TO STAY

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *see also Ortega Trujillo v. Conover & Co. Commc'ns, Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000). A court may enter a stay to promote judicial economy, reduce confusion or prejudice, and prevent possibility of inconsistent resolutions. *Am. Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assocs.*, 743 F.2d 1519, 1525 (11th Cir. 1984). "Courts consider the relative prejudice and hardship 'worked on each party if a stay is or is not granted,' and general efficiency." *Ferrer v. Bayview Loan Servicing, LLC*, No. 15-20877-CIV, 2015 WL 12765420, at *1 (S.D. Fla. Aug. 27, 2015) (quoting *Fitzer v. Am. Inst. of Baking, Inc.*, No. 209-cv-169, 2010 WL 1955974 (S.D. Ga. May 13, 2010)). "A stay of proceedings . . . . is based on a balancing test in which the movant bears the burden of showing either 'a clear case of hardship or inequity' if the case proceeds, or little possibility the stay will harm others." *Dunn v. Air Line Pilots Ass'n*, 836 F. Supp. 1574, 1584 (S.D. Fla. 1993) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)), *aff'd*, 193 F.3d 1185 (11th Cir. 1999).

However, motions to stay are generally disfavored because they can often lead to "case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems." *Tillman v. Advanced Pub. Safety, Inc.*, No. 15-81782-CIV, 2016 WL 11501679, at *1 (S.D. Fla. June 2, 2016) (quoting *United States v. Berkley Reg'l Ins. Co.*, No. 6:15-cv-331-Orl-41, 2015 WL 2452298, at *1 (M.D. Fla. May 21, 2015)). "The party seeking a stay bears the burden of demonstrating its necessity." *Brady v. Ally Fin., Inc.*, No. 3:17-cv-638-J-39JRK, 2017 WL 10651307, at *1 (M.D. Fla. Nov. 21, 2017) (citing *Clinton*, 520 U.S. at 708). "In order to prevail on a motion to stay discovery, the movant must show that 'good cause and reasonableness' support a stay." *Tillman*, 2016 WL 11501679, at *1 (citing *Bocciolone v. Solowsky*, No. 08-20200-CIV, 2008 WL 2906719, at *2 (S.D. Fla. July 24, 2008); *McCabe v. Foley*, 233 F.R.D. 683, 685 (M.D. Fla. 2006)). Ultimately, requests to stay litigation proceedings are "rarely appropriate unless resolution of the motion will dispose of the entire case." *Ray v. Spirit Airlines, Inc.*, No. 12-61528-CIV, 2012 WL 5471793, at *1 (S.D. Fla. Nov. 9, 2012) (quoting *McCabe*, 233 F.R.D. at 685).

## III.  <u>DISCUSSION</u>

As previously set forth, the parties have submitted three Motions for the Court's consideration. First, Defendants move to dismiss the instant action based on lack of subject-matter jurisdiction, lack of personal jurisdiction, and improper venue. Alternatively, Defendants seek to transfer this case to the United States Bankruptcy Court for the Eastern District of Louisiana. Second, Plaintiff moves for a preliminary injunction to assume operation and control of IH Hospice's hospice business and to obtain IH Hospice's Hospice License and Medicare provider number. Finally, Defendants' Motion to Stay requests that this Court stay the instant action

pending a ruling on their Motion to Dismiss. The Court will individually address each Motion below.

## A. MOTION TO DISMISS

Defendants first move to dismiss the instant action for lack of subject-matter jurisdiction, lack of personal jurisdiction, and improper venue pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(3), respectively. The Court will address each basis for dismissal independently.

### 1. Rule 12(b)(1) Motion

Although addressed last in Defendants' Motion to Dismiss, because a federal court's subject-matter jurisdiction is a threshold issue that must be determined before reaching the merits of a dispute, the Court will begin with Defendants' argument that Plaintiff has failed to adequately plead facts that establish subject-matter jurisdiction.

"The jurisdiction of a court over the subject matter of a claim involves the court's competency to consider a given type of case, and cannot be waived or otherwise conferred upon the court by the parties. Otherwise, a party could work a wrongful extension of federal jurisdiction and give courts power the Congress denied them." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) (quoting *Jackson v. Seaboard Coast Line R.R.*, 678 F.2d 992, 1000-01 (11th Cir. 1982)) (internal quotations omitted). "A district court can hear a case only if it has 'at least one of three types of subject matter jurisdiction: (1) jurisdiction under specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).'" *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, 849 F.3d 1313, 1317 (11th Cir. 2017) (quoting *PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1305 (11th Cir. 2016)).

Here, despite Defendants' contention that the Court lacks subject-matter jurisdiction over this case, the Complaint alleges multiple bases for subject-matter jurisdiction. First, the Complaint alleges that diversity jurisdiction exists in this case pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. ECF No. [30-1] at 5, ¶ 4. Specifically, the Complaint indicates that Plaintiff is a Florida corporation with a principal place of business in Florida; IH Hospice is a Louisiana corporation with its principal place of business in Louisiana; and Burden is an individual who is a citizen of Louisiana. *Id.* at 5, ¶¶ 1-3. Thus, complete diversity exists. Moreover, Plaintiff estimates that it "is owed a total of $425,112.43 in unpaid fees due under the Franchise Agreements, a portion of which is royalty and interest on hospice services sales made by [IH] Hospice under [Plaintiff's] Proprietary Marks and business system under the Franchise Agreements." *Id.* at 13, ¶ 41. Accordingly, the amount in controversy exceeds $75,000.00 here. In addition, the Complaint alleges that "[t]his Court also has jurisdiction over the parties and subject matter of this civil action pursuant to 28 U.S.C. §§ 1331 and 1338,[5] in that the action arises in part under the laws of the United States of America, specifically, trademark infringement under the Lanham Act, 15 U.S.C. § 1051, *et seq.*" *Id.* at 5, ¶ 5.

---

[5] Section 1338, which governs patents, plant variety protection, copyrights, mask works, designs, trademarks, and unfair competition, states:

> (a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights. . . .

> (b) The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trademark laws.

28 U.S.C. §§ 1338(a)-(b).

Upon review of the jurisdictional allegations set forth in the Complaint, the Court concludes that it has both federal question and diversity subject-matter jurisdiction to hear the instant action. As such, Defendants' Motion to Dismiss is denied as it relates to subject-matter jurisdiction.

### 2. Rule 12(b)(2) Motion

Turning to the arguments that this matter should be dismissed for lack of personal jurisdiction, Defendants contend that this Court lacks both general and specific personal jurisdiction over them. In particular, Defendants note that they lack sufficient contacts within this state to be hailed into Florida courts, and that they are not subject to the forum-selection clause of the Livingston Franchise Agreement because they were not parties to the Agreement, nor did they assume any obligations under that contract. Plaintiff, on the other hand, maintains that Defendants are bound by the forum-selection clause in the Livingston Franchise Agreement because they assumed the rights and obligations created by the Agreement as successors in interest.[6] Thus, Plaintiff argues that this mandatory forum-selection clause vests this Court with the requisite personal jurisdiction under Florida's long-arm statute.

### a. Whether Defendants are Bound by the Livingston Franchise Agreement

As an initial matter, the Court will address the issue of whether Plaintiff's Complaint sufficiently pleads that Defendants are bound by the terms of the Livingston Franchise Agreement. Plaintiff alleges that Defendants are successors in interest to the Livingston Franchise Agreement and should therefore be held liable for breaches under the Agreement.

In particular, Plaintiff alleges that after IHNO was involuntarily dissolved, the Livingston Franchise Agreement was operated by IHSL, IH Hospice, and Burden with Plaintiff's consent.

---

[6] It is worth noting that Defendants' arguments regarding the lack of personal jurisdiction are the only arguments to which Plaintiff chose to respond. *See generally* ECF No. [42].

ECF No. [30-1] at 7, ¶ 15. Moreover, the Complaint states that Defendants "have held themselves out as the successors of IHNO and they have performed under, and enjoyed the benefits of, the Livingston Franchise Agreement. Accordingly, [IH Hospice], Burden and IHSL have adopted the terms of the Livingston Franchise Agreement and are liable to Interim for all of IHNO's obligations thereunder." *Id.* at 7-8, ¶ 17. Plaintiff alleges that, by enjoying the benefits of the Agreement, operating under Plaintiff's proprietary marks, and being the sole provider of hospice services under the Agreement using Plaintiff's name and proprietary business system, Defendants are bound by the obligations and conditions set forth in the Agreement. *Id.* at 11-14, ¶¶ 30, 42, 44, 46. Finally, the Complaint states that, through Defendants' course of dealing with Plaintiff, they intended for Plaintiff to rely on the implied contractual agreement. *Id.* at 14, ¶ 52.

Although Defendants submit Burden's Declaration to support their conclusory denials of any successor liability, *see* ECF No. [41-1], the Declaration fails to present any allegations to rebut Plaintiff's facts regarding Defendants' status as successors in interest. Instead, Defendants' Motion to Dismiss denies, in a conclusory fashion, any assumption of rights under the Livingston Franchise Agreement. Notably, however, in response to the Preliminary Injunction Motion, Defendants acknowledge that Plaintiff "accepted payment from [IH Hospice] when [IH Hospice] began operating in earnest, essentially amounting to a franchise agreement, albeit not reduced to writing between the parties." ECF No. [37] at 11. Further, Defendants do not contest the fact that they operate in the territories granted to IHNO under the Livingston Franchise Agreement, nor do they sufficiently rebut the contention that they are successors in interest.

"The concept of continuation of business arises where the successor corporation is merely a continuation or reincarnation of the predecessor corporation under a different name." *Amjad Munim, M.D., P.A. v. Azar*, 648 So. 2d 145, 154 (Fla. [4th DCA] 1994). "A 'mere continuation of

business' will be found where one corporation is absorbed by another, as evidenced by an identity

of assets, location, management, personnel, and stockholders." *Sculptchair, Inc. v. Century Arts,*

*Ltd.*, 94 F.3d 623, 630 (11th Cir. 1996). Moreover,

> while it is true that non-signatories are generally not bound by contracts,
> "'traditional principles of state law' may allow 'a contract to be enforced by or
> against nonparties to the contract through assumption, piercing the corporate veil,
> alter ego, incorporation by reference, third party beneficiary theories, waiver and
> estoppel.'" *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166 (11th Cir. 2011)
> (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)). Specifically,
> assumption and equitable estoppel apply here to prevent [Defendants] from
> performing under and reaping the benefits of the Franchise Agreement for [] years,
> and then repudiating the post-expiration obligations on the basis that [they] did not
> sign the Franchise Agreement.

*Cajun Glob. LLC v. Swati Enterprises, Inc.*, 283 F. Supp. 3d 1325, 1330 (N.D. Ga. 2017) (citing

*Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316 (11th Cir. 2001)

(holding that a non-signatory was bound by a contractual arbitration clause because even though

he did not sign the contract with the arbitration provision, the non-signatory did sign a "Takeover

Agreement" which "clearly reveals [his] intent to 'step in the shoes' of [the predecessor]"); *A.L.*

*Williams & Assoc., Inc. v. McMahon*, 697 F. Supp. 488, 494 (N.D. Ga. 1988) (finding that "a party

cannot have it both ways; it cannot rely on the contract when it works to its advantage and then

repute it when it works to its disadvantage."); *Quail Cruises Ship Mgmt. Ltd. v. Agencia De*

*Viagens Cvc Tur Limitada*, No. 09-23248-CIV, 2010 WL 1524313, at *4 (S.D. Fla. Apr. 14, 2010)

(noting that equitable estoppel prevents a party from benefiting "from the terms of a contract while

simultaneously avoiding its burdens.")).

Defendants deny that they ever assumed any of the liabilities or obligations under the

Livingston Franchise Agreement, but they fail to provide any evidence rebutting the allegations in

the Complaint regarding their successor liability—namely, that, "[b]y availing [themselves] to the

benefits of the Franchise Agreements and the use of [Plaintiff's] proprietary information and

business system granted solely to Interim franchisees, [IH Hospice] is bound to the obligations and conditions of the Franchise Agreements." ECF No. [30-1] at 13, ¶ 46. Moreover, as Plaintiff elaborates in its Reply to its Preliminary Injunction Motion, Defendants "merely continued on the business using the same office, the same staff, the same files within the territory and under the rights granted to IHNO under the Livingston Franchise Agreement." ECF No. [39] at 5. At this stage in the litigation, these allegations are sufficient to establish that Defendants are successors in interest to the Livingston Franchise Agreement. *See Sculptchair, Inc.*, 94 F.3d at 630. As such, the Court will proceed to the merits of Defendants' arguments regarding personal jurisdiction.

   **b.  Florida's Long-Arm Statute**

   "A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs. Corp.*, 556 F.3d at 1274. "The Due Process Clause requires that the defendant have minimum contacts with the forum state so that the exercise of personal jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice." *Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1287 (S.D. Fla. 2014) (citing *Melgarejo v. Pycsa Pan., S.A.*, 537 F. App'x 852, 858-59 (11th Cir. 2013)). "Both parts [of the test] must be satisfied for a court to exercise personal jurisdiction over a non-resident." *Am. Fin. Trading Corp. v. Bauer*, 828 So. 2d 1071, 1074 (Fla. 4th DCA 2002). "A plaintiff suing a nonresident defendant bears both the initial burden of alleging a prima facie case of personal jurisdiction and, if that jurisdiction is challenged, the ultimate burden of establishing that its exercise is proper." *Dollar Rent a Car, Inc. v. Westover Car Rental, LLC*, No. 2:16-cv-363-FtM-29CM, 2017 WL 5495126, at *2 (M.D. Fla. Nov. 16, 2017) (citing *Louis Vuitton Malletier, S.A.*

Case No. 19-cv-62412-BLOOM/Valle

*v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013); *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009)).

Florida's long-arm statute, Fla. Stat. § 48.193, "addresses both specific and general jurisdiction." *Caiazzo v. Am. Royal Arts Corp.*, 73 So. 3d 245, 250 (Fla. 4th DCA 2011). Section 48.193 states, in relevant part, that:

> A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> . . . .
>
> 9. Entering into a contract that complies with s. 685.102.
>
> . . . .
>
> (2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla. Stat. §§ 48.193(1)(a), (2).

Thus, under § 48.193, a non-resident defendant can be subject to personal jurisdiction in Florida in two ways: (1) "a defendant [can be subject] to *specific* personal jurisdiction — that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida," and (2) "Florida courts may exercise *general* personal jurisdiction — that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida — if the defendant engages in 'substantial and not isolated activity' in Florida." *Carmouche*, 789 F.3d at 1203-04 (citing Fla. Stat. §§ 48.193(1)(a), (2)); *see also Future Tech. Today, Inc.*, 218 F.3d at 1249; *Sculptchair, Inc.*, 94 F.3d at 626. Plaintiff's Complaint only contains allegations regarding specific personal jurisdiction over Defendants. Accordingly, the Court will limit its discussion to whether specific personal jurisdiction exists.

Case No. 19-cv-62412-BLOOM/Valle

Specific jurisdiction "depends on an 'affiliatio[n] between the forum and the underlying controversy.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint." *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000) (citing *Madara v. Hall*, 916 F.2d 1510, 1516 n.7 (11th Cir. 1990); *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 n.8 & n.9 (1984)). "[A] court has the minimum contacts to support specific jurisdiction only where the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "The requirement that there be minimum contacts is grounded in fairness," *id.*, and assures that "the defendant's conduct and connection with the forum State [is] such that [it] should reasonably anticipate being haled into court there," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). *See also Fraser v. Smith*, 594 F.3d 842, 847-48 (11th Cir. 2010) (discussing specific jurisdiction under Florida's long-arm statute); *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993) (discussing minimum contacts for purposes of specific jurisdiction consistent with due process).

In the Complaint, Plaintiff alleges that jurisdiction is proper here pursuant to the mandatory forum-selection and choice-of-law clause in the Livingston Franchise Agreement. ECF No. [30-1] at 5, ¶ 7. Defendants, however, maintain that the Livingston Franchise Agreement, along with the forum-selection clause within that Agreement, does not apply to them because they are neither parties to the Agreement, nor successors in interest. Moreover, Defendants argue that they cannot be haled into Florida courts because they do not have sufficient minimum contacts with this State.

24

"[S]ections 685.101 and 685.102 allow parties to confer jurisdiction on the courts of Florida by contract alone if certain requirements are met." *Corp. Creations Enters. LLC v. Brian R. Fons Attorney at Law P.C.*, 225 So. 3d 296, 301 (Fla. 4th DCA 2017). Section 685.102(1), Florida Statutes, provides that:

> any person may, to the extent permitted under the United States Constitution, maintain in this state an action or proceeding against any person or other entity residing or located outside this state, if the action or proceeding arises out of or relates to any contract . . . for which a choice of the law of this state . . . has been made pursuant to s. 685.101 and which contains a provision by which such person or other entity residing or located outside this state agrees to submit to the jurisdiction of the courts of this state.

§ 685.102(1). Moreover, § 685.101(1) states:

> The parties to any contract . . . in consideration of or relating to any obligation arising out of a transaction involving in the aggregate not less than $250,000, the equivalent thereof in any foreign currency, or services or tangible or intangible property, or both, of equivalent value . . . may, to the extent permitted under the United States Constitution, agree that the law of this state will govern such contract . . . the effect thereof and their rights and duties thereunder, in whole or in part, whether or not such contract . . . bears any relation to this state.

§ 685.101(1).

In other words, Florida courts have synthesized five characteristics that a contract must have in order to exercise jurisdiction over a foreign defendant pursuant to §§ 685.101-.102:

> (1) Include a choice of law provision designating Florida law as the governing law, in whole or in part;
>
> (2) Include a provision whereby the non-resident agrees to submit to the jurisdiction of the courts of Florida;
>
> (3) Involve consideration of not less than $250,000 or relate to an obligation arising out of a transaction involving in the aggregate not less than $250,000;
>
> (4) Not violate the United States Constitution; and
>
> (5) Either bear a substantial or reasonable relation to Florida or have at least one of the parties be a resident of Florida or incorporated under the laws of Florida.

*Corp. Creations Enters. LLC*, 225 So. 3d at 301.

"If these five requirements are met, then 'personal jurisdiction may be exercised and the courts may dispense with the more traditional minimum contacts analysis.'" *Dollar Rent a Car, Inc.*, 2017 WL 5495126, at *5 (quoting *Corp. Creations Enters. LLC*, 225 So. 3d at 300).[7] "In sum, under Florida law, a Florida jurisdiction conferral clause is a necessary, but not sufficient, component of contractual consent to the court's exercise of specific personal jurisdiction over a non-Florida defendant." *Id.*; *see also Corp. Creations Enters. LLC*, 225 So. 3d at 301 ("sections 685.101 and 685.102 allow parties to confer jurisdiction on the courts of Florida by contract alone").

Here, although the Complaint itself fails to cite to the specific provision of the long-arm statute, the Court nonetheless finds that Plaintiff has sufficiently alleged specific personal jurisdiction because the parties' contractual consent to jurisdiction satisfies the five requirements described above. Paragraph 19 of the Livingston Franchise Agreement states:

> This Agreement **shall be governed by and construed in accordance with the laws of the State of Florida** applicable to contracts made and to be performed in Florida, without regard to conflicts of law principles thereunder. Franchisee acknowledges and agrees that this Agreement is to be substantially performed within the State of Florida. Accordingly, Company and Franchisee agree that **any action or proceeding arising out of or related in any way to this Agreement shall be brought solely in a court of competent jurisdiction sitting in Broward County, Florida**, provided, however, that any action brought by Company to enforce the provisions of Sections 10 or 15 of this Agreement may be brought in a court of competent jurisdiction sitting within any venue permitted by law. Franchisee hereby irrevocably and unconditionally consents to the jurisdiction of any such court and hereby irrevocably and unconditionally waives any defense of

---

[7] "[B]ecause the personal jurisdiction requirement is a waivable right, there are a 'variety of legal arrangements' by which a litigant may give 'express or implied consent to the personal jurisdiction of the court.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) (quoting *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982)). "For example, particularly in the commercial context, parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction." *Id.* (citing *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311 (1964)). "Where such forum-selection provisions have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' their enforcement does not offend due process." *Id.* (quoting *M/S Bremen*, 407 U.S. at 15).

> an inconvenient forum to the maintenance of any action or proceeding in any such court, any objection to venue with respect to any such action or proceeding and any right of jurisdiction on account of the place of residence or domicile of any party thereto. . . .

ECF No. [30-1] at 45, ¶ 19 (emphasis added). As such, this provision of the Agreement satisfies the first and second requirements of §§ 685.101-.102 that the contract contain a choice-of-law provision and a consent to jurisdiction in Florida courts.

Likewise, as noted above, the Complaint alleges over $425,000.00 in unpaid royalties and fees since Defendants' alleged breach. This amount, which accrued over the course of the parties' interactions pursuant to the Livingston Franchise Agreement, supports an inference that the Agreement generated more than the $250,000.00 statutory requirement over the course of the parties' interactions. *See Corp. Creations Enters. LLC*, 225 So. 3d at 302 ("As one court noted, 'even if the parties to an agreement do not exchange at least $250,000, section 685.101 may still apply if, an aggregate of more than $250,000 arises from transactions related to the contract.'" (quoting *Upofloor Americas, Inc. v. S Squared Sustainable Surfaces, LLC*, 6:16-cv-179-Orl-37DCI, 2016 WL 5933422, at *6 (M.D. Fla. Oct. 12, 2016))).

The fourth requirement — namely, that the contract not violate the U.S. Constitution — is also satisfied where, as is the case here, the parties have a freely negotiated commercial agreement that includes a conferral of jurisdiction.

> [W]here the parties have agreed to a valid forum selection clause, the "enforcement [of that clause] does not offend due process." [*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985).] This is particularly true where the contract at issue contains a choice of law provision designating that the law of the forum governs. *See id.* at 481-82. This is because, by agreeing that contractual disputes will be heard in a particular forum and that the forum's substantive law governs, the non-resident has deliberately affiliated with the forum state and can reasonably anticipate that a suit concerning the dispute will be tried in that forum. *See Burger King*, 471 U.S. at 472 n.14, 481-82 (explaining that enforcing a forum selection clause does not offend due process and that a choice of law provision "reinforced [the defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there"); *see also* [*Aviation One of Fla., Inc. v.*

27

> *Airborne Ins. Consultants (PTY), Ltd.*, 722 F. App'x 870, 881 (11th Cir. 2018)]
> (explaining that the South Africa forum selection provision and choice of law
> clause "indicat[e] that Airborne did deliberately affiliate with [South Africa] and
> did not reasonably anticipate being haled into court in the United States based on a
> dispute arising from the policies.").

*Square Ring Inc. v. Troyanovsky*, No. 3:16-cv-641-MCR-GRJ, 2018 WL 7350674, at *11 (N.D. Fla. Feb. 12, 2018) (footnotes omitted).

Finally, because Plaintiff is a resident of Florida,[8] the fifth requirement under the Florida long-arm statute is established. ECF No. [30-1] at 5, ¶ 1. Therefore, the Court concludes that Plaintiff has adequately pled the existence of personal jurisdiction over Defendants pursuant to § 48.193(1)(a)(9) of Florida's long-arm statute. *See United Techs. Corp.*, 556 F.3d at 1274 ("A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction."). Accordingly, Defendants' motion is denied as to the lack of personal jurisdiction.

### 3. Rule 12(b)(3) and § 1404(a) Motion

Finally, Defendants move to dismiss the instant action due to improper venue. Further, although Defendants mention in the heading of their Motion to Dismiss that the case should be transferred pursuant to § 1404(a), they present no arguments regarding the issue of transfer. Thus, the Court will not address the issue of transfer pursuant to § 1404(a).

"The inquiry on a motion to dismiss for improper venue centers on the 'relevant activities of the defendant, not the plaintiff' to ensure a defendant is not 'haled into a remote district having no real relationship to the dispute." *Wyndham Vacation Ownership, Inc. v. Montgomery Law Firm, LLC*, No. 6:18-cv-2121-Orl-37LRH, 2019 WL 5394186, at *7 (M.D. Fla. Aug. 8, 2019) (quoting *Hemispherx Biopharma, Inc. v. MidSouth Capital, Inc.*, 669 F. Supp. 2d 1353, 1356-57 (S.D. Fla.

---

[8] Plaintiff "is a Florida corporation with a principal place of business" in Florida. ECF No. [30-1] at 5, ¶ 1.

2009)). Moreover, a court should consider "only those acts and omissions that have a close nexus to the wrong." *See Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371-72 (11th Cir. 2003).

Generally, venue in a federal action is governed by 28 U.S.C. § 1391, which permits an action to be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b); *see also Spigot, Inc. v. Hoggatt*, No. 2:18-cv-764-FtM-29NPM, 2020 WL 1955360, at *15 (M.D. Fla. Apr. 23, 2020). "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)." *Atl. Marine Const. Co., Inc.*, 571 U.S. at 56. "Where a complaint contains multiple claims, venue must be established for each individual claim and each defendant." *Maid to Perfection Glob., Inc. v. Miller*, No. 6:18-cv-463-Orl-22GJK, 2018 WL 8244570, at *3 (M.D. Fla. Aug. 22, 2018) (quoting *Vivant Pharm., LLC v. Clinical Formula, LLC*, No. 10-21537-CIV, 2011 WL 1303218, at *2 (S.D. Fla. Mar. 31, 2011)).

> Under part (b)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . ." 28 U.S.C. § 1391(b)(2). When evaluating whether a substantial part of the events giving rise to a claim occurred within a venue, courts have considered factors such as (1) where the parties negotiated and drafted agreements, sent agreements, and sent payments under the agreements, *Maid Brigade Sys., Inc. v. Carpenter*, No. 1:93-cv-3000-ODE, 1994 WL 903888, at *8 (N.D. Ga. Aug. 8, 1994); *Md. Nat'l Bank v. M/V Tanicorp I*, 796 F. Supp. 188, 190 (D. Md. 1992); (2) the venue in which a party approached a company and gained access to proprietary information, *Wempe v. Sunrise Med. HHG, Inc.*, 61 F. Supp. 2d 1165, 1173 (D. Kan. 1999); (3)

the place where a party's training, access to and knowledge of trade secrets, and job responsibilities were anchored, *Ciena Corp. v. Jarrad*, 203 F.3d 312, 318 (4th Cir. 2000); and (4) the location designated for litigation pursuant to the terms of a contract or the state's law which would apply pursuant to the terms of a contract, *Varnell, Struck & Assocs., Inc. v. Lowe's Cos ., Inc.*, Nos. 5:06cv068, 5:07cv104, 2008 WL 1820830, at *14 (W.D.N.C. Apr. 21, 2008); *M/V Tanicorp I*, 796 F. Supp. at 190. Courts have also held that substantial events occurred within a venue when harm or injury was suffered in that venue. *See Wempe*, 61 F. Supp. 2d at 1173; *Varnell, Struck & Assocs.*, 2008 WL 1820830, at *14; *Ciena Corp.*, 203 F.3d at 318.

*Mobile Diagnostic Imaging, Inc. v. Gormezano*, No. 12-60888-CIV, 2012 WL 3244664, at *2 (S.D. Fla. Aug. 9, 2012).

Defendants argue that venue is improper in Florida because "[t]he contract was not negotiated; rather, it was presented to defendant in another state. It was executed in another state because that is where defendant signed the contract." ECF No. [41] at 14. Yet, venue can be proper in numerous locations, including, as explained above, in the location designated for litigation pursuant to a contractual agreement or the location where the harm or injury was suffered. *Mobile Diagnostic Imaging, Inc.*, 2012 WL 3244664, at *2.

Here, the Livingston Franchise Agreement designates Florida as the appropriate venue for litigation and notes that, under the terms of the Agreement, a substantial portion of the events occurred in Florida. *See* ECF No. [30-1] at 45, ¶ 19. Moreover, when a "contract is silent as to place of payment, it is presumed to be the place of residence of the payee." *Glob. Satellite Commc'n Co. v. Sudline*, 849 So. 2d 466, 468 (Fla. 4th DCA 2003). Thus, Defendants' alleged failure to make the required payments to Plaintiff under the Livingston Franchise Agreement resulted in Plaintiff sustaining injuries in Florida. *See RG Golf Warehouse, Inc. v. Golf Warehouse, Inc.*, 362 F. Supp. 3d 1226, 1238 (M.D. Fla. 2019); *see also Mobile Diagnostic Imaging, Inc.*, 2012 WL 3244664, at *2 ("Courts have also held that substantial events occurred within a venue when

harm or injury was suffered in that venue."). Thus, the Court concludes that venue is proper in Florida. Based on the foregoing analysis, Defendants' Motion to Dismiss is denied in its entirety.

## B. MOTION FOR PRELIMINARY INJUNCTION

Next, Plaintiff's Preliminary Injunction Motion seeks injunctions against Defendants under its trademark infringement claims, its claims on the Franchise Agreement's post-termination obligations and step-in rights, and its non-compete claims. Defendants oppose the requested injunctions and, in large part, simply reiterate the arguments presented in their Motion to Dismiss.

As noted above, a movant must prove four factors in order to obtain a preliminary injunction: (1) "a substantial likelihood of success on the merits," (2) "that the preliminary injunction is necessary to prevent irreparable injury," (3) "that the threatened injury outweighs the harm the preliminary injunction would cause the other litigant," and (4) "that the preliminary injunction would not be averse to the public interest." *Chavez*, 742 F.3d at 1271 (citing *Parker*, 275 F.3d at 1034-35). However, "a preliminary injunction is a powerful exercise of judicial authority in advance of trial. The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *NE Fla. CAGC of Am.*, 896 F.2d at 1284.

> [T]he burden of persuasion becomes even greater where the relief requested is a mandatory injunction, as opposed to a prohibitory injunction. *See* Trawick, Fla. Prac. & Proc. § 28:1 (2013-2014 ed.). Where the relief requested is mandatory, i.e., not just enjoining a party from acting but rather requiring some affirmative action, then the movant faces "a particularly heavy burden of persuasion." *FHR TB, LLC v. TB Isle Resort, LP*, 865 F. Supp. 2d 1172, 1192 (S.D. Fla. 2011) (Goodman, Mag. J.); *see also Caron Found. of Florida, Inc. v. City of Delray Beach*, 879 F. Supp. 2d 1353, 1360 (S.D. Fla. 2012) (Dimitrouleas, J.) (reiterating that a mandatory injunction should not be granted "except in rare circumstances in which the facts and law are clearly in favor of the moving party").

*Winmark Corp. v. Brenoby Sports, Inc.*, 32 F. Supp. 3d 1206, 1218 (S.D. Fla. 2014). The Court will address the four preliminary injunction factors for each of the claims Plaintiff asserts.

### 1.  Trademark Infringement Claims

Upon review of Plaintiff's request for a preliminary injunction against Defendants for its trademark infringement claims, the Court concludes that Plaintiff's Motion must be granted because it has satisfied all four preliminary injunction factors.

First, "[t]his Circuit has held that in order to prevail on a trademark infringement claim, a plaintiff must show that its mark was used in commerce by the defendant without the registrant's consent and that the unauthorized use was likely to deceive, cause confusion, or result in mistake." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1307 (11th Cir. 1998) (citing *Burger King Corp. v. Mason*, 710 F.2d 1480, 1491 (11th Cir. 1983)). Here, Plaintiff has a strong probability of proving at trial that consumers are likely to be confused by Defendants' improper use of its trademarks. There is no dispute that Defendants have continued to use Plaintiff's trademarks after Plaintiff terminated their relationship. In fact, Defendants concede this point. *See* ECF No. [37] at 2, 4, 6-7, 10-11. "[I]t is well established that 'falsely suggesting affiliation with the trademark owner in a manner likely to cause confusion as to source *or sponsorship* constitutes infringement.'" *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492 (11th Cir. 1983) (quoting *Prof'l Golfers Ass'n of Am. v. Bankers Life & Cas. Co.*, 514 F.2d 665, 670 (5th Cir. 1975)). Indeed, "[t]he unauthorized use of a trademark which has the effect of misleading the public to believe that the user is sponsored or approved by the registrant can constitute infringement." *Id.* at 1492; *Dunkin' Donuts Franchised Restaurants LLC v. EMST Donuts, LLC*, No. 2:07-cv-422-FtM-34DNF, 2007 WL 9718746, at *8 (M.D. Fla. Sept. 17, 2007) (footnote omitted). Trademark infringement is a strict liability offense. *See* 15 U.S.C. §§ 1114, 1125(a). Plaintiff therefore has a substantial likelihood of success on the merits of its claims. The first injunction factor is satisfied.

Second, because of the infringement of the marks, Plaintiff is likely to suffer immediate and irreparable injury if a preliminary injunction is not granted. As a result of Defendants' trademark infringement, Plaintiff has lost the ability to control the quality of the hospice services administered under its brand and proprietary marks.

> Moreover, trademark actions "are common venues for the issuance of preliminary injunctions," *Foxworthy v. Custom Tees, Inc.*, 879 F. Supp. 1200, 1219 (N.D. Ga.1995) (citation omitted), and this Circuit has held that "a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . [a] substantial threat of irreparable harm." *E. Remy Martin & Co. v. Shaw-Ross Int'l Imports*, 756 F.2d 1525, 1530 (11th Cir. 1985); *see also Power Test Petroleum Distributors v. Calcu Gas*, 754 F.2d 91, 95 (2d Cir. 1985) (Irreparable harm exists in a trademark case when the moving party "shows that it will lose control over the reputation of its trademark pending trial."); *Foxworthy*, 879 F. Supp. at 1219 ("When a plaintiff makes a prima facie showing of trademark infringement, irreparable harm is ordinarily presumed.") (citation omitted). Obviously, in this case, such a substantial likelihood of confusion — indeed, a certainty of confusion — of the [Defendants'] substandard products with [Plaintiff's] certified products exists.

*McDonald's Corp.*, 147 F.3d at 1310 (footnote omitted). This constitutes irreparable harm and there is ample evidence of it in the record. *See, e.g.*, *adidas AG v. adidascrazylightz.com*, No. l3-cv-21230, 2013 W L 1651731, at *7 (S.D. Fla. Apr. 16, 2013) (finding irreparable harm when the Plaintiffs did not "have the ability to control the quality of what appeared to be their products in the marketplace"). Thus, the second factor also favors an injunction in Plaintiff's favor.

Third, the balance of harm weighs in Plaintiff's favor here:

> The threatened harm to Plaintiff outweighs any harm Defendants may suffer from the grant of injunctive relief. "Without a preliminary injunction Plaintiff would lose control of its trademarks because Defendant would freely continue to use Plaintiff's registered marks." *Gen. Motors Corp. v. Phat Cat Carts, Inc.*, 504 F. Supp. 2d 1278, 1287 (M.D. Fla. 2006). This poses a continuous threat to Plaintiff's goodwill and franchise system. Moreover, any harm suffered by Defendants as a result of the preliminary injunction is self-inflicted and, therefore, carries little weight. *See* [*Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992)] ("Defendants' self-inflicted harm is far outweighed by the immeasurable damage done [to Plaintiff] by the infringement of its Marks. Defendants simply have no equitable standing to complain of injury should their infringements be preliminarily enjoined."); *see also id.* ("[O]ne who adopts the mark of another for similar goods

acts at his own peril, since he has no claim to the profits or advantages thereby derived." (quotation omitted)).

*CiCi Enterprises, LP v. Four Word Motion, LLC*, No. 6:16-cv-1679-Orl-41KRS, 2016 WL 9244626, at *4 (M.D. Fla. Oct. 17, 2016). In this case, by granting the requested injunction, Defendants would only be prevented from continuing to use Plaintiff's marks without its consent, which is illegal to begin with. Thus, the third factor favors Plaintiff.

Fourth, "public policy considerations mandate the requested relief. In a trademark or service mark infringement case, a third party, the consuming public, is present and its interests are paramount." *Campero USA Corp. v. PCNY, LLC*, No. 11-21094-CIV, 2011 WL 13319576, at *8 (S.D. Fla. Sept. 8, 2011) (citing *Davidoff & Cie. S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1300 (11th Cir. 2001) (preliminary injunction "is not adverse to the public interest, because the public interest is served by preventing consumer confusion in the marketplace.")). "[W]hen a trademark is said to have been infringed, what is actually infringed is the right of the public to be free of confusion and the synonymous right of the trademark owner to control his products' reputation." *Sundor Brands, Inc. v. Borden, Inc.*, 653 F. Supp. 86, 93 (M.D. Fla. 1986). Applying these principles here, the Court readily finds that the public interest favors granting the preliminary injunction to protect Plaintiff's trademark interests and to protect consumers from being misled.

Based on the satisfaction of all four preliminary injunction factors, the Court concludes that Plaintiff's Motion must be granted as to its trademark infringement claims.[9]

---

[9] Defendants fail to meaningfully address Plaintiff's request for a preliminary injunction on its trademark infringement claims. However, they do attempt to present conclusory and unsubstantiated affirmative defenses of estoppel due to abandonment, acquiescence, or laches in an effort to rebut Plaintiff's trademark infringement allegations. ECF No. [37] at 10-11. Yet, the only evidence Defendants provide in support of these defenses is IH Hospice's date of incorporation, ECF No. [37-1], which does not, absent more, establish that Plaintiff is estopped from asserting claims for trademark infringement. *See, e.g.*, *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1175 (11th Cir. 2002) ("Because a finding of abandonment works an involuntary forfeiture of rights, federal courts uniformly agree that defendants

### 2.   Breach of Contract Claim for Post-Termination Obligations and Step-in Rights

Next, Plaintiff requests an injunction against Defendants based on its breach of contract claims. In particular, Plaintiff seeks to enforce the non-compete provision of the Livingston Franchise Agreement and the post-termination obligations and step-in rights. "While federal procedural law governs the Court's application of the injunction standards, the interpretation and construction of the franchise agreements is governed by state substantive law." *7-Eleven, Inc. v. Kapoor Bros. Inc.*, 977 F. Supp. 2d 1211, 1220 (M.D. Fla. 2013) (citing *FHR TB, LLC v. TB Isle Resort, LP*, 865 F. Supp. 2d 1172, 1191 (S.D. Fla. 2011); *Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1448 (11th Cir. 1991)).

### a.   Enforcement of the Non-Compete Provision

First, Plaintiff requests that this Court grant a preliminary injunction against Defendants to enforce the non-compete provision in the Livingston Franchise Agreement. "Under Florida Law, non-compete agreements are lawful provided that they are reasonable as to time, area, and line of business and the party seeking enforcement of a non-compete agreement proves the existence of one or more legitimate business interests justifying the restrictive covenant." *Autonation, Inc. v. McMann*, No. 17-62250-CIV, 2018 WL 2006868, at *2 (S.D. Fla. Feb. 22, 2018) (citing Fla. Stat. § 542.335). However, in the instant case, the Court declines to grant the requested preliminary injunction against Defendants to honor the non-compete clause in the Livingston Franchise Agreement. Under Florida law, "[a] court shall not enforce a restrictive covenant unless it is set forth in a writing signed by the person against whom enforcement is sought." Fla. Stat. § 542.335(1)(a). As discussed at length above, the Livingston Franchise Agreement was not signed by Defendants. Thus, it cannot be enforced against them. With regard to the preliminary injunction

---

asserting an abandonment defense face a 'stringent,' 'heavy,' or 'strict burden of proof.'" (footnote omitted)).

factors, the Eleventh Circuit has explained that the substantial likelihood of success on the merits is "generally the most important [factor]." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005). Here, Plaintiff has failed to establish a substantial likelihood of success on the merits of the non-compete claim. Accordingly, Plaintiff's Preliminary Injunction Motion is denied as to Plaintiff's request to enforce the noncompete provision of the Livingston Franchise Agreement.

### b.  Post-Termination Obligations and Step-in Rights

In addition, Plaintiff also seeks to enforce the post-termination step-in rights in the Livingston Franchise Agreement. With regard to the first preliminary injunction factor, as noted above, Defendants' continued operation and use of Plaintiff's proprietary marks and systems and their refusal to comply with the post-termination obligations after the relationship was terminated—which Defendants do not contest—sufficiently support Plaintiff's substantial likelihood of success on this breach of contract claim.

Likewise, regarding the second factor, the Court concludes that Plaintiff has established irreparable harm. Notably, Defendants do not contest the fact that they have violated their post-termination obligations by continuing to operate under Plaintiff's proprietary marks and by refusing to comply with the step-in rights set forth in the Livingston Franchise Agreement. Further, as discussed previously, the likelihood of consumer confusion and the potential loss of goodwill from Defendants' continued improper operation of Plaintiff's hospice business will result in irreparable harm. *See Winmark Corp.*, 32 F. Supp. 3d at 1223. Moreover, Plaintiff has submitted evidence establishing that Burden has poorly managed IHSL's hospice business during its pending bankruptcy litigation, which has resulted in the appointment of a trustee to operate the business, and Burden will likely do the same with IH Hospice. ECF No. [30-1] at 80-102. This poses

additional concerns of irreparable harm due to the potential threat to the safety and health of IH Hospice patients, and the threat of loss of employees due to IH Hospice's inability to continue its ongoing operations. *Cf. Burger King Corp. v. Cabrera*, No. 10-20480-CIV, 2010 WL 5834869, at *10 n.8 (S.D. Fla. Dec. 29, 2010) (noting that cases that "involve health and safety issues . . . undoubtedly increase the potential for irreparable harm if a delinquent franchisee is not" enjoined), *report and recommendation adopted*, No. 10-20480-CIV, 2011 WL 677374 (S.D. Fla. Feb. 16, 2011). Plaintiff has therefore established that it has suffered and will continue to suffer irreparable, non-monetary harm if Defendants continue to operate under Plaintiff's Medicare provider number and hospice license. *Cf. Winmark Corp.*, 32 F. Supp. 3d at 1223 (concluding that there was no threat of irreparable harm sufficient to warrant a mandatory injunction where the harm claimed was an inability to determine the amount of royalties owed due to the breach of the franchise agreement).[10] As such, the Court concludes that the heightened burden required for issuance of a mandatory injunction is met here.

In addition, the Court concludes that the balance of harms weighs in Plaintiff's favor. "Generally, a franchisee that has breached the terms of its franchise agreement cannot then complain of harm from an injunction to prevent further violations of the agreement." *Winmark Corp.*, 32 F. Supp. 3d at 1224; *see also Cajun Glob. LLC*, 283 F. Supp. 3d at 1331.

---

[10] A mandatory injunction would also allow Plaintiff to preserve the continued operation of its hospice business, by ensuring that employees are paid and that services are adequately provided while this litigation is ongoing. *Cf. Peterbrooke Franchising of Am., LLC v. Miami Chocolates, LLC*, No. 16-20417-CIV, 2016 WL 8787063, at *11 (S.D. Fla. June 29, 2016) ("[O]ther than the alleged breach of the Franchise Agreement related to the failure to adopt the new POS system, Plaintiff has failed to present any evidence that (1) Defendants are currently infringing upon PFA's trademarks or purported trade dress; or (2) Defendants' continued operation has caused any harm whatsoever to the goodwill associated with the Peterbrooke brand. Indeed, the record supports the opposite conclusion. The issuance of a mandatory injunction would require Defendants to close their store, surrender their business, and cause employees to lose their jobs. Thus, in light of PFA's failure to demonstrate that it will suffer any actual or imminent irreparable harm absent enjoinment, the balance of harm actually tips in favor of the Defendants."), *report and recommendation adopted*, No. 16-20417-CIV, 2016 WL 8787064 (S.D. Fla. Aug. 8, 2016).

> Although the Court recognizes that Defendants will suffer financial losses if a preliminary injunction issues, that harm is a result of Defendant's own failure to comply with numerous requirements of their [] franchise agreements. Weighing Defendants' self-inflicted injury against Plaintiffs' immeasurable losses to its hard-earned goodwill, the Court finds that the balance of harms weighs decisively in favor of granting the requested injunctive relief.

*Dunkin' Donuts Franchised Restaurants LLC v. D&D Donuts, Inc.*, 566 F. Supp. 2d 1350, 1361-62 (M.D. Fla. 2008); *see also Sylvan Learning Inc. v. Learning Sols., Inc.*, 795 F. Supp. 2d 1284, 1303 (S.D. Ala. 2011) ("Harm resulting from Defendants' failure to comply with the [Franchise] Agreement is a 'self-inflicted injury' which is decisively outweighed by the immeasurable loss to [Plaintiff's] goodwill."). Additionally, "Any harm suffered by Defendants resulting from the enforcement of the post-termination obligations . . . is [also] 'self-inflicted' injury caused by Defendants' breach of the [Livingston Franchise] Agreement and is outweighed by the consideration that Defendants knowingly agreed to such obligations" when operating under and benefitting from the Agreement's terms. *Sylvan Learning Inc.*, 795 F. Supp. 2d at 1303.

Finally, "[a]s a matter of public policy, enforcement of contract terms is favored as long as said terms are not oppressive, onerous, or otherwise unconscionable." *Great Am. Ins. Co. v. Conart Inc.*, No. 1:05-cv-038(WLS), 2006 WL 839197, at *6 (M.D. Ga. Mar. 29, 2006); *see also Sylvan Learning Inc.*, 795 F. Supp. 2d at 1304. Further, Plaintiff here has established that the requested preliminary injunction against Defendants is not against the public interest because "[t]he public interest is served by supporting contractual enforcements that fortify the franchise system itself." *Cajun Glob. LLC*, 283 F. Supp. 3d at 1331 (citing *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992)).

Accordingly, Plaintiff has sufficiently established that a preliminary injunction is warranted as to its post-termination obligations and step-in rights under the Livingston Franchise Agreement. Thus, the Preliminary Injunction Motion is granted as to this issue.

### 3.   Preliminary Injunction Bond

Finally, Plaintiff suggests that a bond of $150,000.00 is appropriate in this case due to the strength of its claims and because, according to Plaintiff, "it is unlikely that Interim will need to secure costs for Defendants as a result of filing" the Preliminary Injunction Motion. ECF No. [30] at 19-20. Notably, Defendants make no mention of any opposition to Plaintiff's request in their Response.

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Eleventh Circuit has explained that "it is well-established that 'the amount of security required by the rule is a matter within the discretion of the trial court . . . [, and] the court may elect to require no security at all.'" *BellSouth Telecomm., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005) (alteration in original) (quoting *City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. Unit B Feb. 1981)); *see also Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 302-03 (5th Cir. 1978). "The burden of establishing a rational basis for the amount of a proposed bond rests with the party seeking security." *Medi-Weightloss Franchising USA, LLC v. Sadek*, No. 8:09-cv-2421-T-24MAP, 2010 WL 1837767, at *8 (M.D. Fla. Mar. 11, 2010) (citing *Continental Grp., Inc. v. KW Property Mgmt., LLC*, No. 09-60202-CIV, 2009 WL 3644475, at *6 (S.D. Fla. Oct. 30, 2009) ("The 'burden is on the party seeking security to establish a rational basis for the amount of a proposed bond.'")), *report and recommendation adopted*, No. 8:09-cv-2421-T-24MAP, 2010 WL 1837764 (M.D. Fla. Apr. 29, 2010). "The determination of the amount of the injunction bond, however, lies within the sound discretion of the Court." *Id.* (citing *Carillon Importers, Ltd. v. Frank Pesce Int'l Grp. Ltd.*,

112 F.3d 1125, 1127 (11th Cir. 1997) ("The amount of an injunction bond is within the sound discretion of the district court)).

In the instant case, because the Court has concluded that Plaintiff is entitled to entry of a preliminary injunction in its favor, and because Defendants have failed to voice any opposition to the proposed bond amount, the Court will exercise its discretion and require that Plaintiff post security in the amount of $150,000.00.

### C.  MOTION TO STAY

Lastly, Defendants seek a stay in this case, pending the resolution of their Motion to Dismiss and due to IHSL's ongoing Chapter 11 bankruptcy proceedings. Given the Court's resolution of Defendants' Motion to Dismiss above, the request to stay these proceedings on this basis is denied as moot. Moreover, Defendants' argument that the Court should stay this case due to IHSL's bankruptcy, consistent with its prior order, ECF No. [27], misses the mark. This Court stayed the proceedings against IHSL, and against Burden as the shareholder and operator of IHSL, because any relief granted in Plaintiff's favor against Burden, as the shareholder of IHSL, regarding the Medicare license would necessarily impact IHSL and its assets — a result that is clearly contrary to the purpose of an automatic stay in bankruptcy proceedings.

Here, on the other hand, IH Hospice is a separate corporate entity from IHSL, and the requested relief against IH Hospice, and against Burden as sole shareholder of IH Hospice, would not affect or frustrate the automatic stay in IHSL's ongoing bankruptcy. That IHSL and/or Burden owns the stock to IH Hospice does not eliminate IH Hospice's independent existence and separate corporate structure such that it would fall under the protection of IHSL's automatic stay. *See Holmes v. Gainey Transp. Servs., Inc.*, No. CIVA 5:08-cv-422HL, 2008 WL 5412334, at *1 (M.D. Ga. Dec. 24, 2008) ("This [bankruptcy] statute . . . does not automatically stay judicial proceedings

against nonbankrupt third parties or codefendants. Only in 'unusual circumstances' do courts extend the automatic stay to nondebtor codefendants." (citing *In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1147 (5th Cir. 1987); *Teachers Ins. and Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986); *Willford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 126-27 (4th Cir. 1983); *McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 510 (3d Cir. 1997); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)). Accordingly, Defendants' request to stay this action due to the automatic stay in IHSL's ongoing Chapter 11 bankruptcy proceeding is denied.

## IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Defendants' Motion to Dismiss, **ECF No. [40]**, is **DENIED**.

2.  Plaintiff's Preliminary Injunction Motion, **ECF No. [30]**, is **GRANTED in part and DENIED in part** as follows:

    a.  Defendants IH Hospice and Burden, their agents, servants, and employees, and those people in active concert or participation with them, are **RESTRAINED AND ENJOINED** from: (i) Using the Interim Proprietary Marks or any trademark, service mark, logo or trade name that is confusingly similar thereto; (ii) Otherwise infringing upon [Plaintiff's] Proprietary Marks or using any similar designation, alone or in combination with any other components; (iii) Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of IH Hospice and Burden's businesses, goods, or services; and (iv) Causing a likelihood of confusion or misunderstanding as to IH Hospice and Burden's affiliation,

connection, or association with Interim and its franchisees or any of their goods and services.

    b.   Defendants IH Hospice and Burden, their agents, servants, and employees, and those people in active concert or participation with them, must allow Plaintiff to enforce its step-in rights, as articulated in Section 17 of the Livingston Franchise Agreement, and must assign to Plaintiff the licenses, permits, certificates of need, and other authorizations, including the assignment of the Hospice License and Medicare provider number.

    c.   Plaintiff shall post a bond in the amount of $150,000.00, as security.

3. Defendants' Motion to Stay, **ECF No. [33]**, is **DENIED**.

4. The Clerk of Court is directed to **REOPEN** the above-styled case so that this litigation may proceed against Defendants Interim Healthcare Hospice, Inc. and Julia Burden, **only** in her capacity as sole shareholder of IH Hospice. The Court will separately enter a Scheduling Order setting all trial and pre-trial deadlines.

5. This case, as it relates to Defendant Interim Healthcare of Southeast Louisiana, Inc. shall remain **STAYED**, and no decision shall be rendered against Defendant Interim Healthcare of Southeast Louisiana, Inc., and Defendant Julia Burden, **only** in her capacity as shareholder of Interim Healthcare of Southeast Louisiana, Inc., until the Bankruptcy Court grants relief from the automatic stay or the stay lapses.

6. All pending deadlines as they relate to Defendant Interim Healthcare of Southeast Louisiana, Inc., and Defendant Julia Burden, **only** in her capacity as shareholder of Interim Healthcare of Southeast Louisiana, Inc., shall remain **STAYED**.

Case No. 19-cv-62412-BLOOM/Valle

**DONE AND ORDERED** in Chambers at Miami, Florida, on June 10, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

43